**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James John DORNHOFER,
Defendant–Appellant.**

No. 88–5518.

United States Court of Appeals,
Fourth Circuit.

Argued July 27, 1988.

Decided Oct. 17, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 14, 1988.

John David Grad (Michael P. Logan, Susan B. Smith, John D. Grad & Associates, Alexandria, Va., on brief), for defendant-appellant.

Paul George Cassell, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

WIDENER, Circuit Judge:

James John Dornhofer was convicted of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Dornhofer appeals, challenging federal jurisdiction, the validity of the government's search and seizure, the

admissibility of predisposition evidence, the district court's refusal to give certain jury instructions, the legality of the government sting operation, and the admissibility of statements Dornhofer made during the government's search. Finding no error, we affirm.

This case arises out of a government sting operation known as Operation Looking Glass. The government set up a Hong Kong company known as Far Eastern Trade Company which solicited orders for child pornography from those suspected of being consumers of child pornography. The sting operation targeted Dornhofer as a result of a U.S. Customs seizure of child pornography that was addressed to Dornhofer. Far Eastern sent a letter to Dornhofer offering to provide a catalog of pornographic materials involving children. Dornhofer responded. Far Eastern then sent a catalog of available child pornography. Dornhofer ordered *Lolita Sex* (MLS–04) and *Children Love* (MLC–05) from the catalog and enclosed a forty-five dollar check for payment. *Lolita Sex* was summarized in the catalog in graphic terms describing explicit sexual acts of girls "8 years up to 15 years in hard core action." *Children Love* was also described in explicit terms as "[g]irls and boys from 4 years to 15 years in group sex orgies with adults." It advertised a description of a nine year old girl performing oral sex on an adult male. Responding to Dornhofer's order, the materials were mailed to Dornhofer with a Virgin Islands postmark, the sting being operated out of the Virgin Islands to help make the pornography company more realistic. Mack had mailed them from New Jersey to Inspector Northrop of the Washington, D.C. division in an unsealed envelope, who had the pornography given to the regular letter carrier assigned to Dornhofer's route, who delivered them toDornhofer's address. Dornhofer took the child pornography out of his mail box.

Inspector Northrop had earlier received an anticipatory search warrant, conditioned on his placing the child pornography in the mail. The government agents watched Dornhofer remove the material from his mail box and go to his apartment. A few minutes later, Dornhofer was seen leaving his apartment, and the government agents introduced themselves and told him they had a search warrant. The agents entered Dornhofer's apartment. Dornhofer said that he had something that the agents wanted and that he wanted to give it to them then because it really upset him; he was speaking of *Lolita Sex* and *Children Love*. The agents found the child pornography in a drawer in Dornhofer's bedroom and seized it. They also found and seized evidence later offered to show predisposition, including a notebook made by Dornhofer that included pictures of nude children, four novels and several magazines discussed below.

At trial, Dornhofer's theory of defense was that his ordering of the child pornography was inadvertent. He testified that frequently catalogs offer child pornography but the offers are usually just exaggerated claims and actually the pornography is of adult models. He also claimed not to have read the catalog description of child pornography that he ordered. He was convicted, and filed a timely appeal.

■ Dornhofer challenges federal jurisdiction, arguing that the child pornography was never in the regular stream of the mail. All that 18 U.S.C. § 2252(a)(2) requires is that a person knowingly receive child pornography "that has been transported or shipped in interstate or foreign commerce or mailed." The evidence established that the pornography order was mailed from the Virgin Islands' office to Inspector Mack in New Jersey. Inspector Mack, in New Jersey, mailed the pornography to Inspector Northrop of the Washington, D.C. Division in an unsealed envelope. Inspector Northrop sealed the envelope and gave the pornography to Inspector Smith, who gave it to the letter carrier normally assigned to the Arlington, Virginia route, which includes Dornhofer's address, who delivered it to that address. The letter carrier delivered the pornography to Dornhofer's mail box. Dornhofer took the pornography out of his mail box. We conclude that the child pornography was "mailed"

within the meaning of the statute.[1]

Dornhofer also contends that the government attempted to manufacture federal jurisdiction. We have just decided that question adversely to his contention in *United States v. Goodwin,* 854 F.2d 33, 37, n. 3 (4th Cir.1988), and see no use in further discussion.

■ Defendant next contends that there were several problems with the legality of the search and seizure. He argues that anticipatory search warrants are unconstitutional and if not unconstitutional then improperly allowed in the present case. We recently upheld an anticipatory search warrant for child pornography in *United States v. Goodwin,* supra, 854 F.2d at 36. We adopted the analysis of the Ninth Circuit in *United States v. Hale,* 784 F.2d 1465, 1468–69 (9th Cir.1986), and held that an anticipatory warrant is permissible "where the contraband to be seized 'is on a sure course to its destination, as in the mail ...'" *Goodwin,* 854 F.2d at 36, quoting *United States v. Hale,* 784 F.2d at 1468. In the present case, in the affidavit upon which the search warrant was issued, Inspector Northrop stated that he would place the contraband in the United States mail to be delivered to Dornhofer. The magistrate conditioned the validity of the search warrant on the contraband being so placed in the mail. When Northrop placed the contraband in the mail, the requirement of *Goodwin* that the contraband was on a sure course to its destination was met. We conclude the anticipatory search warrant in this case is valid.

■ Dornhofer also contends that the search warrant was overly broad on its face. He argues that it lacked constitu-

tionally required specificity. The challenged warrant permitted the seizure of "[v]arious books, magazines, photographs, negatives, films and/or video cassettes depicting minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256." 18 U.S.C. § 2256(2) defines sexually explicit conduct as: "actual or simulated—(A) sexual intercourse, including genital-genital, oral-genital, or oral anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic abuse; or (E) lascivious exhibition of the genitals or pubic area of any person." We agree with the Ninth Circuit that when a warrant describes the sought for material "in the graphic terms of the statute on the sexual exploitation of children the ... [material] is described with all the particularity necessary to satisfy the Fourth Amendment." *United States v. Wiegand,* 812 F.2d 1239, 1243 (9th Cir. 1987), cert. denied, — U.S. —, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987).[2]

■ Dornhofer also challenges the seizure of the predisposition evidence since it was not specifically mentioned in the warrant. However, we do not "read the search warrant as a constitutional strait jacket: that only those items particularly described in it may be seized without regard to the facts and circumstances of the particular case." *Anglin v. Director, Patuxent Institution,* 439 F.2d 1342, 1346 (4th Cir. 1971), cert. denied, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971). "Once the privacy of the dwelling has been lawfully invaded, it is senseless to require police to obtain an additional warrant to seize items they have discovered in the process of lawful search." 439 F.2d at 1347. In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct.

---

**1.** The Ninth Circuit interprets 18 U.S.C. § 1461, the prohibition against knowingly using the mails to mail obscene matter, "to include persons who use the mails to *order* the delivery of obscene materials." *United States v. Hurt,* 795 F.2d 765, 769 (9th Cir.1986) (emphasis in original). The Tenth Circuit interprets 18 U.S.C. § 2251(a), which prohibits the participation of minors in the production of child pornography that will be mailed, to reach a person who acts in a way where it is "reasonably foreseeable that his activities will result in the use of the mail." *United States v. Esch,* 832 F.2d 531, 540 (10th

Cir.1987) cert. denied — U.S. —, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988).

**2.** Defendant contends that the First Circuit expressly disagreed with *Wiegand* in *United States v. Diamond,* 820 F.2d 10, 12. (1st Cir.1987) (en banc). We do not accept that analysis, however. *Diamond* held that the phrase "pre-pubescent children" was a constitutionally sufficient description, and did not reach the question of whether or not "minors" was insufficient.

2737, 49 L.Ed.2d 627 (1976), the Court approved the seizure of evidence not specifically mentioned in the search warrant. In *Andresen,* the warrant at issue authorized the seizure of documents related to a specific piece of real estate that was involved in an alleged fraud. The investigators also seized evidence of fraudulent dealings with other lots. The Court upheld the seizure of the evidence, concluding that the evidence could be used to show the defendant's intent and absence of mistake. In the case at bar, Dornhofer's notebook containing pictures of nude children, the four novels—*Horny Balling Daughter, In Heat Daughter, Daughter loves to Suck* and *The Family Comes Together,* and the magazines *Fifteen, Teenage Sex, Teenager, Sweet Little Sixteen, Teen Splitters,* and *Young and Naked,* could be used to show Dornhofer's predisposition toward child pornography as well as his lack of mistake when he ordered the child pornography in question.

■ Dornhofer also challenges the admission of the predisposition evidence on relevancy grounds. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The fact that Dornhofer had a notebook containing pictures of nude children, novels dealing with incest, and magazines such as *Fifteen, Sweet Little Sixteen* and *Young and Naked,* makes Dornhofer's claim that he ordered the child pornography by mistake less probable.

■ Dornhofer also asserts that, if relevant, the evidence still should have been excluded under Fed.R.Evid. 403. Rule 403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." The standard required to exclude relevant evidence is high. "We have stated previously that the possibly prejudicial effect of evidence can 'require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence'" *United States v. Foretich,* 846 F.2d 941, 945 (4th Cir.1988), quoting *United States v. Masters,* 622 F.2d 83, 87 (4th Cir.1980). In the case at hand, we do not think the district court abused its discretion in its determination that the probative value was not substantially outweighed by the danger of unfair prejudice.

■ Dornhofer contends that the district court erred when it refused to instruct the jury as to his theory of the case. As long as the instructions have an evidentiary foundation and are accurate statements of the law, the district court should include instructions "to instruct the jury in the defendant's theory of defense." *United States v. Mitchell,* 495 F.2d 285, 287–288 (4th Cir.1974). Dornhofer's theory of defense was that he purchased the child pornography inadvertently. The district court instructed the jury that:

> the Government must prove beyond a reasonable doubt that, first, the defendant knowingly and willfully received a visual depiction of a minor ... An act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reason. The purpose of adding the word knowingly is to insure that no one will be convicted for an act done because of mistake or accident or other innocent reason. An act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids.

We think that instruction adequately conveyed to the jury the law which supported Dornhofer's theory of defense. Dornhofer also desired several instructions on *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), that possession of obscenity in the home is constitutionally protected. The district court ruled that the issue was not before the jury and declined to give the instructions. We find no error in refusing to instruct the jury on law that was not relevant to the issues before the jury. Dornhofer was charged with knowingly receiving child pornography that was mailed, not with merely possessing it.

Dornhofer contends that Operation Looking Glass involved such overreaching by government officials that it violated due process. We recently rejected that due process defense as applied to another Operation Looking Glass—defendant in *United States v. Goodwin*, 854 F.2d 33 (4th Cir. 1988). Since the sting operation was not applied much differently to Dornhofer than it was to Goodwin, the due process argument fails here also.

 We likewise reject Dornhofer's argument that the statements he made to the officers during the search of his apartment were inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Dornhofer was not then arrested and was not in custody. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).

The judgment of conviction is accordingly

AFFIRMED.